# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY W. VANDERBUSCH,<br><br>Plaintiff,<br><br>v.<br><br>JOHN CHOKATOS,<br><br>Defendant. | Case No. 1:13-cv-01422-LJO-EPG (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 51, 79, 83, 86)<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

The Court has before it Defendant John Chokatos' Motion for Summary Judgment (ECF No. 51), as well as evidentiary motions/objections filed by both Plaintiff (included within ECF No. 79) and Defendant (ECF No. 83, 86). For the reasons discussed below, the Court recommends that the motion for summary judgment be denied, that Plaintiff's evidentiary objections/motions be denied as moot and without prejudice, and that Defendants evidentiary objections be overruled.

## I. PROCEDURAL BACKGROUND

Plaintiff, Gary Vanderbusch, is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding against John Chokatos for deliberate indifference to serious medical needs in violation of the Eighth Amendment. (ECF Nos. 16, 59).

Plaintiff commenced this action on September 5, 2013, by filing a Complaint against Defendants Enenmoh, Mahmoud Rashidi, John Chokatos, and Junior Fortune. (ECF No. 1). On March 3, 2015, the Court screened the Complaint and found that it failed to state any cognizable claim against the named Defendants. (ECF No. 15).

Plaintiff filed a First Amended Complaint on April 6, 2015. (ECF No. 15). On June 27, 2016, the Court screened the First Amended Complaint and found that Plaintiff alleged a cognizable claim against John Chokatos, but failed to state a claim against the remaining defendants. (ECF No. 18). On December 11, 2017, the Court issued findings and recommendations to the assigned district judge, recommending dismissal of all claims, except Plaintiff's claim for deliberate indifference in violation of the Eighth Amendment against Defendant John Chokatos ("Defendant"). (ECF No. 57). On December 28, 2017, the assigned district judge adopted the findings and recommendations in full. (ECF No. 59).

On February 24, 2017, the Court issued a Scheduling Order in this action, setting a non-expert discovery cut-off date of August 11, 2017, and a dispositive motion deadline of December 8, 2017. (ECF No. 28). On June 23, 2017, the Court issued a Second Scheduling Order, extending the non-expert discovery cut-off date to August 31, 2017. (ECF No. 32). On September 1, 2017, the Court extended the non-expert discovery cut-off date to October 16, 2017. (ECF No. 40). On October 17, 2017, the Court again extended the non-expert discovery cut-off date to November 17, 2017. (ECF No. 46).

On December 5, 2017, Defendant filed a motion for summary judgment (ECF No. 51), and a notice pursuant to *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc) (ECF No. 54). On January 2, 2018, Plaintiff filed a Rule 56(d) motion arguing that the motion for summary judgment is premature and requesting to reopen discovery. (ECF No. 61). On January 18, 2018, Defendant filed a response to Plaintiff's motion. (ECF No. 63). On February 2, 2018, Plaintiff requested, and the Court granted an extension of the time to file a reply. (ECF Nos. 66, 69). Plaintiff filed his reply on February 26, 2018. (ECF No. 70). On June 15, 2018, the Court entered an order denying Plaintiff's Rule 56(d) motion and directing Plaintiff to file his response to Defendant's motion for summary judgment within 30 days of

the Court's order. (ECF No. 73.)

Shortly before the deadline for filing a response, on July 16, 2018, Plaintiff moved the Court for an additional forty-five (45) days from July 6, 2018, to file his response to Defendant's motion for summary judgment. (ECF No. 74.) In support of his need for additional time, Plaintiff cited his limited access to the law library, his mobility challenges, and his other medical conditions. The Court granted Plaintiff's request for additional time but noted that more than seven months had passed since Defendant filed the motion for summary judgment on December 5, 2017; that Plaintiff had ample time to oppose the motion; and that Plaintiff had filed multiple pleadings since the motion for summary judgment was filed but had not filed the critical filing—Plaintiff's opposition to the motion for summary judgment. The Court also informed Plaintiff that no further extensions would be granted. (ECF No. 75.)

On August 9, 2018, Plaintiff again requested additional time, this time requesting an additional 30 days, until September 20, 2018, to file his response to Defendant's motion for summary judgment. (ECF No. 76.) Plaintiff again cited to his medical conditions and limited access to the law library, and asserted that the prison went on lockdown on July 29, 2018, resulting in ongoing limited access to the law library. The Court granted in part the request for additional time, giving Plaintiff a short extension of time to August 28, 2018, to file his response to Defendant's motion for summary judgment.

The Court received Plaintiff's opposition for filing on August 24, 2018 (ECF No. 79), and received additional exhibits in support of Plaintiff's opposition on the following business day, August 27, 2018 (ECF No. 81). Defendant filed his reply in support of summary judgment on August 31, 2018. (ECF No. 82.)

## II. STANDARD FOR SUMMARY JUDGMENT

A grant of summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a

material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to judgment. *See Celotex*, 477 U.S. at 323.

A verified complaint and other pleadings may be used as an opposing affidavit under Rule 56, as long as Plaintiff's statements therein are based on his personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10–11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).

In ruling on the motion for summary judgment, the Court views all inferences from the underlying facts in the light most favorable to Plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. FACTUAL SUMMARY

Plaintiff is a prisoner who, at all relevant times, was in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and was incarcerated at Pleasant Valley State Prison in Coalinga, California. (ECF No. 52 at 2; ECF No. 79 at 62.)

Plaintiff has a long history of medical issues. Plaintiff severely injured his left ankle, leg tendon, and leg muscle in 1973. (ECF No. 79 at 243 (Pl. Decl. at 2).). Following this injury, Plaintiff required medical treatment and accommodations, including orthopedic shoes and a cane. (*Id.*)

In 1996, Plaintiff suffered spinal injuries from a car accident. (ECF No. 79 at 243; Pl. Decl. at 2.) In April 2007, an MRI was performed on Plaintiff's cervical spine. The medical records indicate that Plaintiff suffered from degenerative disc disease and other cervical problems and injuries. (ECF No. 79 at 243-44 (Pl. Decl. at 2-3).) In September 2007, Plaintiff had a consultation with a neurosurgeon and the neurosurgeon ordered additional tests, which were performed in February 2008. (ECF No. 79 at 244 (Pl. Decl. at 3-4).) In March 2008, the neurosurgeon recommended Plaintiff be admitted for surgery. (ECF No. 79 at 244 (Pl. Decl. at 3).)

In June 2009, Plaintiff underwent surgery on his cervical spine. (ECF No. 79 at 245 (Pl. Decl. at 4).) After Plaintiff was released from the hospital, he returned to prison and continued to suffer symptoms of spasms, headaches, neck pain, lack of sensation, and muscle weakness. (ECF No. 79 at 246 (Pl Decl. at 5).) In August 2009, an x-ray of Plaintiff's spine was performed, and it is Plaintiff's understanding that the results indicated that the natural curvature of his cervical spine was reversed. (ECF No. 79 at 247 (Pl. Decl. at 6).)

In June 2011, Plaintiff had an appointment with Dr. Coleman, his primary care physician at the time. Plaintiff complained to Dr. Coleman about continuing spasms in his spine, headaches, neck, and back pain. Dr. Coleman ordered x-rays of Plaintiff's cervical

spine, physical therapy, and continued Plaintiff's prescription of methadone for pain. (ECF No. 79 at 247 (Pl. Decl. at 6).)

Also in June 2011, Plaintiff saw Dr. Thomas, who took x-rays of Plaintiff's left ankle and cervical spine. Plaintiff understood that the test results showed degenerative joint narrowing, degenerative osteoarthritis of the left ankle, a straightening of the natural curvature of the cervical spine, and evidence of spinal muscle spasms. (ECF No. 79 at 248 (Pl. Dec. at 7).)

In July 2011, Plaintiff had an appointment with Dr. Wilson, a primary care physician. It was Plaintiff's understanding that he had degenerative joint disease, with cervical stenosis causing pain, and neuropathy. (ECF No. 79 at 248 (Pl. Decl. at 7).)

Beginning August 18, 2011, and through July 23, 2013, Plaintiff became the patient of and was treated by Defendant, Dr. John Chokatos. (ECF No. 51-3 at 2-3 (Def. Decl. at 3).) It is the treatment, or lack of treatment, by Dr. Chokatos that is at issue in this case. Although the parties agree that Defendant first saw Plaintiff on August 18, 2011, what occurred during and after that initial visit is, for the most part, in dispute. The following is a high-level review of facts not in dispute.

At the August 18, 2011, initial visit, Plaintiff explained to Defendant that Plaintiff had previously had surgery on his cervical spine. (ECF No. 79 at 248-29 (Pl. Decl. at 7-8).) Defendant observed Plaintiff walk slowly in a bent over posture, using a cane, and taking small steps. (ECF No. 51-3 at 3 (Def. Decl. at 3); ECF No. 79 at 63 (Pl. Stmt. Undisputed & Disputed Facts at 4).) At the end of the visit, Defendant continued Plaintiff's prescription for methadone, a long acting narcotic, and carbamazepine, an anticonvulsant and a pain medication, but denied Plaintiff's request to also receive a muscle relaxant. (ECF No. 51-3 at 5 (Def. Decl. at 5).)

On August 24, 2011, Plaintiff was seen by the Pain Management Committee ("PMC") regarding Plaintiff's medical conditions and Plaintiff's complaints about Defendant. (ECF No. 79 at 250-51 (Pl. Decl. at 9-10).) The PMC ordered a muscle relaxer and physical therapy for muscle spasms in Plaintiff's spinal area and Plaintiff's tension headaches. (*Id.*; ECF No.

81 at 148 (Pl. Ex. M50).) The PMC ordered methadone be continued for Plaintiff's pain. (*Ibid.*) The PMC also ordered accommodations of a cervical spine pillow, a cervical collar, a wooden cane, orthopedic shoes, and a bottom bunk. (ECF No. 81 at 148-150 (Pl. Ex. M50-M51).)

On August 25, 2011, Plaintiff was seen by another primary care physician. The medical records from this visit indicate that the doctor would start Plaintiff on the new medication regime recommended by the PMC and a robust physical therapy regime. (ECF No. 79 at 251 (Pl. Decl. at 10); ECF No. 81 at 156 (Pl. Ex. M53).)

On September 19, 2011, Plaintiff again saw Defendant. Defendant prescribed aspirin, methadone (a long acting narcotic), and oxcarbazepine (for muscle relaxation). (ECF No. 51-3 at 8 (Def. Decl. at 8-9); ECF No. 81 at 128-30 (Pl. Ex. M56); ECF No. 79 at 251-52 (Pl Decl. at 10-11).) Plaintiff also requested that he be provided with an ankle wrap for support of his ankle, but Defendant refused to prescribe an ankle support device. (*Ibid.*)

Plaintiff saw Defendant again on October 13, 2011. At this visit, Defendant informed Plaintiff that Plaintiff did not need pain medication, a cane, or a lower bunk accommodation. (ECF No. 51-3 at 9-10 (Def. Decl. at 9-10).) Defendant ordered that Plaintiff be tapered off the methadone prescription, and that Plaintiff be prescribed aspirin and oxcarbazepine for pain control. (*Id.*) Defendant took Plaintiff off methadone by November 2011 and did not prescribe any medication to replace the methadone. (*See* ECF No. 51-3 at 9-14 (Def. Decl. at 9-14); ECF No. 79 at 253 (Pl. Decl. at 12); ECF No. 81 at 158 (Pl. Ex. M54); ECF No. 81 at 133-34 (Pl Ex. M58).)

In June 2012, Defendant again saw Plaintiff. Plaintiff complained of extreme neck and back pain as well as multiple other medical conditions, and requested treatment for the conditions, including pain medication, physical therapy, and treatment for hypertension and chest pain. (ECF No. 79 at 256-257 (Pl. Decl. at 15-16); ECF No. 51-3 at 11-12 (Def. Decl. at 11-12).) Defendant prescribed aspirin, ibuprofen, and oxcarbazepine for Plaintiff's pain, but refused to order a pain narcotic or physical therapy. (ECF No. 51-3 at 11-12 (Def. Decl. at 11-12.).)

Plaintiff next saw Defendant on February 28, 2013. Either before or after this visit, Defendant removed Plaintiff from the CDCR's Disability Placement Program and cancelled Plaintiff's accommodations for ground floor cell, bottom bunk, cane, orthopedic shoes, cervical pillow, and physical limitations on job performance. (*See* ECF No. 51-3 at 12-13 (Def. Decl. at 12-13); ECF No. 51-4 at 70-75 (Def. Decl. Ex. M); ECF No. 79 at 261-63 (Pl. Decl. at 20-21); ECF No. 81 at 209 (Pl. Ex. M79, M80).) Plaintiff's cell was also searched in connection with this visit, and his medications were either seized or were not found in his cell. (*Ibid.*) Plaintiff was without any of his medications, including his heart pressure medication, from February 28, 2013, to April 25, 2013, when his medications were renewed. (ECF No. 79 at 263-264 (Pl. Decl. at 22-23).)

On September 5, 2013, Plaintiff filed this action against Defendant, claiming that Defendant acted with deliberate indifference to Plaintiff's serious medical needs by denying him pain and other medication, denying him physical therapy, and by removing the accommodations of a lower bunk, cane, orthopedic shoes, cervical pillow, and physical limitations on job performance. (ECF No. 1.) The next day, on September 6, 2013, Plaintiff was transferred to Lancaster State Prison. (ECF No. 79 at 265 (Pl. Decl. at 24).)

In October 2013, at Lancaster State Prison, Plaintiff was prescribed a lower tier lower bunk, and a cane, and an x-ray of his spine was ordered and conducted. (ECF No. 81 at 231-234 (Pl. Ex. M87, M88).) In June 2014, Plaintiff was placed back on the Disability Placement Program, his accommodations of lower bunk and a cane were affirmed, Plaintiff was given a mobility impaired vest, an American with Disabilities Act status tag was placed on his door, and physical limitations were imposed on job placement. (ECF No. 81 at 236-239 (Pl. Ex. M89, M90).) The records from the x-rays of Plaintiff's spine indicate that Plaintiff has degenerative changes of the lumbar and thoracic spine, and that Plaintiff was diagnosed with congestive heart failure attributed in part to uncontrolled high blood pressure. (ECF No. 79 at 265-66 (Pl. Dec. at 24-25); ECF No. 81 at 240-250 (Pl. Ex. M91-M95).) Plaintiff received treatment for his conditions, and accommodations for Plaintiff's medical conditions were continued.

**IV. Discussion**

A. <u>Defendant's Objections to Plaintiff's Evidence</u>

Defendant has filed evidentiary objections to Plaintiff's declaration and exhibits attached to that declaration. (ECF No. 83; ECF No. 86.) Defendant objects on numerous grounds, including that the exhibits were not properly authenticated, that the evidence includes hearsay, that the evidence is improper expert opinion, that the evidence is not relevant, that the "M" exhibits were not timely filed, and that differences regarding medical opinion do not demonstrate deliberate indifference. (ECF No. 83 at 2-47; ECF No. 86.)

In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay or is not properly authenticated. *See id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because, at trial, plaintiff's testimony of contents would not be hearsay); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) (finding "declarations that do contain hearsay are admissible for summary judgment purposes because they could be presented in an admissible form at trial" (internal quotation marks omitted)); *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.").

As to Defendant's hearsay and authenticity objections, to the extent that the facts underlying Plaintiff's declarations are within his personal knowledge, and he could testify about the matters at trial, the declarations are adequate for summary judgment purposes. Further, many of the medical records to which Defendant objects are the same medical records that Defendant submits in support of his motion for summary judgment, and there is nothing about the records submitted by Plaintiff that calls their authenticity into question. Plaintiff may authenticate these documents at trial but need not do so at this stage of the

proceeding. *See Fraser*, 342 F.3d at 1036-37; *see also Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) ("[Rule 56] requires only that evidence 'would be admissible,' not that it presently be admissible. Such an exception to the authentication requirement is particularly warranted in cases such as this where the objecting party does not contest the authenticity of the evidence submitted but nevertheless makes an evidentiary objection based on purely procedural grounds."). Moreover, any admissions by Defendant are not hearsay. *See* Fed. R. Evid. 801(d)(2)(A).

The medical records submitted by Plaintiff could also qualify as a record of a regularly conducted activity and are therefore admissible for purposes of summary judgment under Federal Rule of Evidence 803(6).[1]

Defendant also objects that Plaintiff's declarations and exhibits contain improper expert opinion under Federal Rule of Evidence 702. There are two types of opinion testimony—lay witness testimony or expert witness testimony. A lay witness "opinion is limited to one that is: a) rationally based on the witness's perception; b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Lay witness testimony generally summarizes first-hand sensory observations and "is not to provide specialized explanations or observations that an untrained layman could not make if perceiving the same acts or events." *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (quoting *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001)); *see Hanger Prosthetics & Orthopedics, Inc. v. Capstone, Orthopedic, Inc.*, No. 2:06-cv-02879-GEB-KJM, 2008 WL 2441067, at *2 (E.D. Cal. June 13, 2008) ("The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field.") (internal punctuation and citations omitted).

To the extent Plaintiff expresses opinions not based on his first-hand knowledge of the

---

[1] As with other physical evidence, although authentication is not required for consideration on summary judgment, such evidence would be admissible at trial only if properly authenticated. *See* Fed. R. Evid. 901(a).

facts of this case, but instead applies the facts to specialized knowledge that a lay person would not possess, the Court declines to consider that testimony as it does not qualify as lay opinion testimony. *See Conn*, 297 F.3d at 554. For example, the Court will not rely on statements in Plaintiff's declarations characterizing or expressing opinions about medical records, or expressing opinions regarding the adequacy of treatment rendered by Defendant.[2]

As to Plaintiff's "M" exhibits, Defendant objects that these exhibits were not timely produced/filed. Plaintiff's opposition and supporting documents were received and filed with the Court on August 24, 2018, and referred extensively to "M" exhibits. Those "M" exhibits were not received and filed with the Court until the following business day, August 27, 2018. There is no indication that Plaintiff caused any delay in the Court receiving the "M" exhibits for filing, and the Court notes that this is not the first time there has been a delay in the Court receiving a portion of a prisoner's filing. Further, the Court granted Plaintiff an extension of time to August 28, 2018, to file his opposition to Defendant's motion for summary judgment. (ECF No. 77.) The "M" exhibits were filed prior to that deadline, albeit separately from Plaintiff's other opposition filings. The Court deems Plaintiff's "M" exhibits timely filed.

Defendant's objection that a difference regarding medical opinion is not sufficient to prove deliberate indifference is not an argument regarding admissibility of Plaintiff's evidence but is instead a legal argument, addressed below.

Finally, with respect to Defendant's relevancy objections, the Court will consider only the evidence submitted by Plaintiff that the Court deems relevant.

B. Plaintiff's Motion Objecting and Disputing Pain Specialist Notes

Plaintiff objects to medical notes from pain specialist Dr. G. Williams (ECF No. 79 at 296), progress notes from PA Fortunes (ECF No. 79 at 289), and the declaration from Defendant's expert witness (ECF No. 79 at 281). The Court does not rely on this evidence and will accordingly recommend denying Plaintiff's motions as moot.

---

[2] Again, the medical records themselves could be considered a record of a regularly conducted activity admissible under Federal Rule of Evidence 803(6). Further, Plaintiff's statements might be admissible under other exceptions to the rule against hearsay. *See, e.g.*, Fed. R. Evid. 803(4) (Statement Made for Medical Diagnosis or Treatment). However, for purposes of summary judgment, the Court need not make that determination.

11

1  C. <u>Motion for Summary Judgment on Deliberate Indifference to Medical Needs Claim</u>

2      1. <u>Deliberate Indifference Standard</u>

The Eighth Amendment of the United States Constitution entitles Plaintiff to medical care and is violated when a prison official acts with deliberate indifference to an inmate's serious medical needs. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." *Wilhelm*, 680 F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow*, 681 F.3d at 985 (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122.

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Rather, to show deliberate indifference, the plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" *and* that the defendant "chose this course in conscious disregard of an excessive risk to plaintiff's health." *Id.* (citation omitted).

   2. <u>Analysis</u>

Plaintiff alleges that Defendant acted with deliberate indifference by intentionally disregarding Plaintiff's urgent need for medical treatment, including treatment for his neck and back pain, and removing Plaintiff's access to accommodations necessary for his medical conditions, and that Defendant altered, revised, and embellished medical documents and

records, and fabricated medical history, with the intent to harm Plaintiff and to justify Defendant's refusal to provide Plaintiff with needed treatment.

The parties dispute what occurred during and after the various medical visits Plaintiff had with Defendant, and these disputes are material, particularly given Plaintiff's assertion that Defendant altered, revised, embellished, and fabricated Plaintiff's medical records and Plaintiff's medical history to support Defendant's intentional disregard of Plaintiff's urgent medical needs.

For example, Defendant states in his declaration that during the initial visit on August 18, 2011, Plaintiff complained to him of weakness and paralysis on the right side of his body; that Plaintiff indicated that he had suicidal intentions; that Defendant physically examined Plaintiff and nothing in the physical examination supported a finding of weakness or paralysis on the right side of the body; and that his observations of Plaintiff did not indicate that Plaintiff was in pain or that he had pain with movement. (*See* ECF No. 51-3 at 3-7.) Defendant also declares that he observed Plaintiff walking across the prison yard back to his cell, and that Plaintiff

> was walking quickly with normal steps, and that he walked vigorously with equal push off from both feet. I observed he had no apparent limp and his posture was erect. I observed he had normal arm swing. Although he carried a cane in his left hand, Mr. Vanderbusch did not appear to use the cane to support his weight or to be shifting his weight with the use of cane hand or bearing any weight on the cane.

(ECF No. 51-3 at 5-6.)

Plaintiff disputes Defendant's version of what happened during and after that initial visit and contends that the medical records from that visit (and subsequent visits) are inaccurate and have been falsified.[3] Plaintiff declares that Defendant did not physically examine him at all during this initial visit. Plaintiff declares that the visit consisted of Plaintiff

---

[3] There are three different versions of the medical records from the first visit. (*See* ECF No. 81 at 138-146 (Pl. Ex. M47, M48, M49).) The Court notes the discrepancies between these different versions as well as Defendant's explanation for the discrepancies. Because the Court finds other material factual disputes foreclose the grant of summary judgment, the Court need not rely on the discrepancies in the different versions of these medical records, but notes that these discrepancies, viewed in the light most favorable to Plaintiff, lend some support to Plaintiff's position.

explaining his medical history regarding his spinal surgery and ankle injury, and the current state of his condition and pain, and that he told Defendant about his pain and that he was hoping to start physical therapy for his spine as recommended by Dr. Coleman. (ECF No. 79 at 248-49 (Pl. Decl. at 7-8).) Plaintiff states that he never complained of right sided weakness or paralysis. Plaintiff instead complained of right side shoulder and arm pain, general weakness, spinal spasms, headaches, neck and back pain, arthritis, and degenerative disease, among other things. (ECF No. 79 at 62-67 (Pl. Stmt. Undisputed and Disputed Facts at 3-8).)[4] Plaintiff denies that he told Defendant that he had suicidal intentions. (*Id*.)

Plaintiff also disputes Defendant's description of the way Plaintiff walked across the yard back to his cell after the visit. Plaintiff denies that he walked, or even had the capacity to walk, in the way described by Defendant due to his serious medical conditions, and that Defendant's narrative is false and fabricated. (*See* ECF No. 79 at 67-68 (Pl. Stmt. Undisputed and Disputed Facts at 8-9).) Plaintiff states that it is physically impossible for him to walk at a pace and in the manner described by Defendant; that unless the prison was on lock down (which it was not), he would not have been accompanied by a correctional officer as an escort or otherwise. (ECF No. 79 at 19-20, 67-68, 136-137.) Plaintiff contends that Defendant's description is false and fabricated, and that the medical records relied on/created by Defendant are falsified. (*Id.*)

That this factual dispute is material is demonstrated by the repeated references—in the medical records created by Defendant, Defendant's expert's declaration, and Defendant's opposition—to Defendant's "observations" of Plaintiff, including Plaintiff's manner of walking (which Plaintiff states is falsified and fabricated), and the results of the physical examination of Plaintiff (which Plaintiff says did not occur).

Both Defendant and Defendant's expert rely on Defendant's "observation" of Plaintiff's manner of walking, and the results of Defendant's physical examination of Plaintiff in

---

[4] Plaintiff has verified his Statement of Undisputed and Disputed Facts (ECF No. 79 at 60-96), as well as his Separate Statement in Opposition to Summary Judgment (ECF No. 79 at 99-163) and Declaration (ECF No. 79 at 242-278).

justifying the subsequent medical treatment provided by Defendant. This medical treatment includes the reduction and elimination of Plaintiff's narcotic pain medication, the refusal to provide an ankle support for Plaintiff, the refusal to provide physical therapy, and the removal of all accommodations for Plaintiff. (*See, e.g.,* ECF No. 51-3 at 5-6 (relying on physical examination and observations of August 18, 2011); *id.* at 8-9 (relying on "observations and physical examination of" Plaintiff and medical records to justify denial of ankle support device); *id.* at 10 (relying on examinations and observations of Plaintiff "walking normally and at normal or fast pace without any obvious gait disturbances" or muscle weakness to justify denial of methadone); *id.* at 10 (relying on examinations and observations of Plaintiff to justify denial of physical therapy; *see also* ECF No. 51-4 at 14-18 (Feinberg Decl. at 14-18).) For example, in removing the methadone, Defendant states that he relied on examinations of Plaintiff and Defendant's "observations of [Plaintiff] outside the medical facility where he walked normally at a fast pace which showed no gait disturbances or muscle weakness," as well as the side effects of long term methadone use, and his consultation with a psychiatrist. (ECF No. 51-3 at 10-11 (Def. Decl. at 10-11).)

      Contrary to Defendant's argument, the evidence does not merely demonstrate a difference of medical opinion. Rather, the evidence demonstrates that there is a genuine dispute of material fact about what happened during and after both the initial visit and subsequent visits, and whether the medical records created by Defendant accurately reflect what happened and Plaintiff's physical condition. If, as Plaintiff asserts, Defendant altered, revised, embellished, and fabricated Plaintiff's medical records and medical history to support an intentional denial of medical treatment, this demonstrates not a difference of medical opinion but rather conduct intended to deny Plaintiff treatment for his pain and other medical needs.

      The Court finds that there are genuine disputes of material fact, and that a reasonable jury, viewing the evidence in the light most favorable to Plaintiff, could find that Defendant purposefully acted and/or failed to respond to Plaintiff's pain or possible medical need, and that harm was caused by this indifference. *See Wilhelm*, 680 F.3d at 1122 (Deliberate

indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference."). Summary judgment should therefore be denied.

## V. RECOMMENDATION

Based on the foregoing, the Court recommends as follows:

1. Defendant's motion for summary judgment (ECF No. 51) be DENIED.
2. Plaintiff's Motions and Declarations Objecting and Disputing Pain Specialist Dr. G. Williams Medical Notes (ECF No. 79 at 296) be DENIED as moot.
3. Plaintiff's Motion and Declaration Objecting and Disputing PA Fortunes Progress Notes (ECF No. 79 at 289) be DENIED as moot.
4. Plaintiff's Motion and Declaration Objecting and Disputing Expert Witness Declaration (ECF No. 79 at 281) be DENIED as moot.
5. Defendant's Objections to Plaintiff's Declaration and Exhibits K-1 to K-16 (ECF No. 83) and to Plaintiff's Four Volumes of Exhibits filed on August 27, 2018 (the "M" Exhibits) (ECF No. 86) be OVERRULED.
6. That Plaintiff's motion for a stay or extension of time to dispute Defendant's claim that Plaintiff did not produce exhibits (ECF No. 88) be DENIED as moot.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **fourteen (14) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

IT IS SO ORDERED.

Dated: **September 12, 2018**　　　　　/s/ Erin P. Grosj

UNITED STATES MAGISTRATE JUDGE